DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

CHRISTIAAN H. HIGHSMITH (CABN 296282)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7368
    FAX: (415) 436-7027
    christiaan.highsmith@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JARAY SIMMONS,<br><br>    Defendant. | CASE NO. CR. 18-00179-002 EMC<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Date:     August 14, 2019<br>Time:    2:30 p.m.<br>Courtroom: 5, 17th Floor |

## I.    INTRODUCTION

The United States submits this sentencing memorandum to aid the Court in sentencing Defendant Jaray Simmons for his involvement in two armed home invasion robberies and a marijuana trafficking conspiracy. During the two home invasions in this case, Simmons and his co-conspirators broke down the front doors of two houses, brandished firearms at the residents, tied up the residents, struck several residents, and, at gunpoint, demanded marijuana and cash from the residents. The Probation Office correctly described Simmons' conduct as "what people have nightmares about." PSR, Sentencing Recommendation, at 2. Simmons' crimes are "almost unfathomable and absolutely terrifying." *Id.* Crucially, Simmons' has engaged in this conduct before—he has three prior armed

UNITED STATES' SENTENCING MEMORANDUM
NO CR. 18-00179-002 EMC

1

robbery convictions in his native North Carolina. One case involved robbing a victim at gunpoint, for which Simmons received a sentence of more than eight years in prison. That sentence did not deter Simmons. Based on the unique circumstances of this case, the United States respectfully recommends a sentence of 18 years (216 months) in prison.

## II.   SIMMONS' GUIDELINES' RANGE IS 194-221 MONTHS IN PRISON

The United States has no objections to the PSR. The PSR and the parties' plea agreement contain the same Guidelines' calculations. Simmons' pled guilty to conspiracy to commit robbery affecting interstate commerce (Count One), conspiracy to possess with intent to distribute marijuana (Count Two), and brandishing a firearm during, and in relation to, and in furtherance of a crime of violence and a drug trafficking crime (Count Five). Plea Agreement (ECF No. 122), at 1-2. With respect to Counts One and Two, Simmons' Total Offense Level is 28. PSR, Sentencing Recommendation, at 1. Simmons falls within Criminal History Category IV (although CHC IV underrepresents his criminal conduct). *Id.* at 1-2. Therefore, Simmons faces a Guidelines' range of 110-137 months' imprisonment for the robberies and marijuana trafficking conspiracy (Counts One and Two). *Id.* 1. Crucially, the 110-137 month Guidelines' range contains no enhancements for possession or use of a firearm. Instead, Simmons' faces an additional seven-year (84-month) mandatory consecutive term of imprisonment for brandishing a firearm during and in relation to a crime of violence and a drug trafficking crime (Count Five). Therefore, as the PSR correctly points out, the 84-month sentence "shall be added to the [G]uideline[s'] range for the other counts, which would result in a total [G]uideline[s'] range of 194 to 221 months." *Id.* at 3. Therefore, the 18-year (216-month) sentence recommended by the United States falls toward the top of the applicable Guidelines' range.

The Probation Office recommends a significant downward variance and a total sentence of 168 months (14 years) imprisonment. This recommendation is inappropriate and fails to serve the purposes of sentencing under 18 U.S.C. § 3553(a). Given the nature and circumstances of the violent armed robberies in this case, Simmons' numerous prior armed robbery convictions, the fact that Simmons' Criminal History Category underrepresents his criminal conduct, and Simmons' prior eight-year North Carolina prison sentence, a 18-year sentence is appropriate in this unique case.

## III. AN 18-YEAR (216-MONTH) SENTENCE IS APPROPRIATE HERE

### A. Nature and Circumstances of the Offense

This case is the stuff of "nightmares"—"masked men storming into your home in the middle of the night with guns drawn [and demanding money and marijuana]." *Id.* at 2. This case is particularly egregious because Simmons and his co-defendants robbed not one but two houses. They arrived at the first house, terrorized the innocent residents at gunpoint, demanded money and marijuana, and, upon finding no money and marijuana, proceeded to a second house nearby. Rather than abandon an unsuccessful mission, Simmons and his co-conspirators decided to terrorize a second group of innocent residents at gunpoint in their own home. *Id.*

Further, Simmons and his co-defendants traveled approximately 3,000 miles across the United States with the explicit purpose of committing an armed home invasion robbery in Northern California. Plea Agreement, at 4. On March 8, 2018, Simmons and three co-conspirators drove west from Winston-Salem, North Carolina, bound for Sonoma County, California. PSR ¶ 7. Simmons knew the purpose of their trip—to do armed home invasion robberies in Northern California to obtain bulk quantities of marijuana and cash he and the others believed would be stored inside the target house. *Id.* The North Carolina group (Simmons and co-defendants Chrishawn Beal, Ledarrell Crockett, and Jade Johnson) drove across the United States in just two days. *Id.* They arrived in Sacramento, California, on March 10, 2018. *Id.* In Sacramento, the group obtained a supply of firearms and marijuana packaging materials. *Id.* ¶ 8; Plea Agreement, at 4. Simmons understood that he and his co-conspirators would use the firearms during the planned home invasion robberies for marijuana. Plea Agreement, at 4.

Late at night on March 11, or early in the morning on March 12, the North Carolina group drove from Sacramento to a Days Inn in Novato, where they met with a group from Virginia. *Id.* at 9. The Virginia group consisted of co-defendants Siddiq Abdullah, Romello Jones, Nakia Jones, and Melvin Corbin. *Id.* At the Days Inn, the defendants obtained a picture of the house they planned to target for the armed home invasion robbery. The two groups – the North Carolina group and the Virginia group – then drove in two separate cars to the target home located on a residential street in Petaluma. *Id.* Simmons and his co-defendants parked in an alley. Simmons and five of his co-defendants walked from

the cars to the first house. All six were armed. Simmons' handgun was loaded. Plea Agreement, at 5.

Shortly after 3:00 a.m. on March 12, 2018, in the dark of night on a rural road, Simmons and his co-conspirators kicked open the front door of the first house. *Id.* The conspirators' terrorized the man and woman inside. They forced both victims into the bathroom and bound the victims' hands behind their backs with duct tape. *Id.* Simmons and his conspirators demanded the location of marijuana and cash inside the house. *Id.* At least one conspirator pointed his firearm at the victims and threatened to kill them. *Id.* One conspirator struck the male victim, injuring him. *Id.* The threats and violence were all part of a coordinated attempt to obtain a supply of marijuana and cash from the residents. One victim yelled out that they had the wrong house. Finally, Simmons and his conspirators left. *Id.*

Rather than abandon a failed mission, however, the conspirators left the first house and tried again at a second house. This is another aggravating factor in this case. Simmons and his conspirators knew they had gone to the wrong house and terrorized two innocent residents inside. But Simmons and his co-conspirators did not hesitate in proceeding to a second house to terrorize innocent people there. After leaving the first house, Simmons and his co-conspirators walked up the hill to a second house. *Id.* at 6. They split into two smaller groups. *Id.* One group broke into the second house through the front door. *Id.* The second group broke into the house through a side door. *Id.* Once inside the house, the conspirators saw that the female resident was on the telephone. *Id.* They grabbed the telephone and threw it on the floor. *Id.*

Simmons and his co-conspirators terrorized the female resident inside the second house in a second attempt to steal cash and marijuana. One conspirator pointed his firearm at the victim to get her to give up the location of marijuana and cash. *Id.* A conspirator grabbed the victim by her hair, dragged her to a closet, and locked her inside. *Id.* Meanwhile, two conspirators encountered a neighbor outside the second house and proceeded to terrorize him. *Id.* The conspirators tied up the neighbor with an electrical extension cord, repeatedly struck and injured him, and demanded the location of marijuana and money. *Id.* At the second house, Simmons and his co-conspirators again threatened at least one of the victims with death. The fact that Simmons and his co-conspirators terrorized so many innocent victims both with violence, threats of death, and by pointing guns directly at victims without hesitation is

UNITED STATES' SENTENCING MEMORANDUM
NO CR. 18-00179-002 EMC

4

another aggravating factor in this case warranting an 18-year sentence. *Id.*

Finally, the North Carolina defendants' flight from police after the home invasions endangered the community and presents another aggravating factor at sentencing. Hearing sirens, the conspirators fled from the second house, entered the two cars they had arrived in, and drove away. Simmons and the three other North Carolina defendants drove at speeds greater than 100 miles per house in order to escape the police. This high-speed escape endangered other drivers on Route 101 that morning. During the drive, Simmons, Beal, and Crockett threw the three semi-automatic handguns they had used during the home invasions out the window. Days later, law enforcement recovered the firearms on the side of the highway. One of the firearms had been reported stolen in Winston-Salem, North Carolina. *Id.* at 6.

Given the unique nature and circumstances of these armed home invasions—including, violently terrorizing multiple innocent victims in the middle of the night in their own homes, brandishing firearms at the victims, threatening to kill the victims, striking and injuring victims, locking victims up, dragging one victim by the hair, advance planning and cross-country travel with the specific purpose of conducting armed home invasion robberies, and a dangerous high-speed escape—an 18-year sentence is warranted here.

### B.   History and Characteristics of the Defendant

Simmons' significant criminal history is another crucial factor supporting an 18-year, Guidelines' sentence. A lower sentence with a downward variance might be warranted if Simmons had no criminal history or if he had never previously served a significant prison sentence. But Simmons has three prior felony convictions for the same conduct—armed robbery. PSR ¶¶ 52, 53. All three of his prior armed robberies occurred on separate occasions. *Id.* On April 4, 2009, for example, Winston-Salem police arrested Simmons for participating in an armed robbery. PSR ¶ 53. The violent conduct was striking. There, a shopkeeper's two daughters were standing in a parking lot while their father closed his store. *Id.* One of the daughters heard footsteps and then someone grabbed her from behind and put a gun to her head. The two perpetrators forced her back into the store at gunpoint and took $600 from her backpack. *Id.* On February 6, 2010, the Forsyth County Court in Winston-Salem, North Carolina, sentenced Simmons to eight years and six months in custody for armed robbery and second

UNITED STATES' SENTENCING MEMORANDUM
NO CR. 18-00179-002 EMC

5

degree kidnapping in that case and for his two previous armed robbery offenses. PSR ¶¶ 52, 53. Put simply, Simmons has a pattern and practice of committing armed robbery, and he is a danger to the public. Even an eight year and six month sentence did not deter Simmons from participating in the two armed home invasions in this case. On the contrary, Simmons drove from North Carolina to California to conduct the armed home invasions in this case after serving an eight year and six month consolidated sentence for his three North Carolina armed robbery convictions.

Moreover, Simmons' Criminal History Category (IV) significantly underrepresents the seriousness of his criminal history. PSR ¶ 107. If Simmons' three armed robbery convictions had not been consolidated for sentencing, Simmons likely would have qualified as a Career Offender, Criminal History Category VI, and a significantly greater Guidelines' range. Thus, the starting point for his sentencing could have been far higher than the current 194-221-month Guidelines' range. As the Probation Office correctly noted, an upward departure may be warranted in this case under U.S.S.G. § 4A1.3(a)(1). *Id.* The government's recommended 18-year (216-month) sentence does not include an upward departure. Nevertheless, the fact that Simmons has a significant and directly relevant criminal history, a previous eight year and six month sentence for the same conduct (armed robbery), and a underrepresented Criminal History Category further supports the government's recommendation of a Guidelines' sentence of 216 months in this case.

Simmons' personal and family history is another important factor at sentencing, but it does not negate or lessen the nature and circumstances of Simmons' crimes in this case, his significant and directly relevant criminal history, and the danger he poses. Simmons' childhood involved abuse, violence, and a lack of adult support. PSR ¶¶ 68-70. Simmons' upbringing was worse than most, but not all, of the criminal defendants commonly in this Court. Therefore, while the violent conduct in this case, Simmons' significant criminal history, and his underrepresented criminal history might warrant a sentence above the top of the Guidelines, the government here is recommending an 18-year sentence, which falls at the higher end of the applicable Guidelines' range.

///

///

UNITED STATES' SENTENCING MEMORANDUM
NO CR. 18-00179-002 EMC

### C. The Other § 3553(a) Sentencing Factors Also Support an 18-Year Sentence

An 18-year sentence is sufficient but not greater than necessary to deter both Simmons and other similarly situated defendants from committing additional crimes. 18 U.S.C. § 3553(a)(2)(B), (C). Simmons previously received an eight year and six month sentence for committing three armed robberies. That significant sentence, however, did not deter Simmons from traveling 3,000 miles across the United States to commit the two armed home invasion robberies in this case. Nor did the previous sentence protect the public from Simmons' future crimes. Here, Simmons knew exactly what he was doing. He knew the consequences. He was under no illusions about the pain and suffering armed robberies cause victims. He had previously been involved in the armed robbery of the storeowner's daughter discussed above. Nevertheless, Simmons committed another series of armed robberies, this time invading two homes in the middle of the night and terrorizing the innocent residents inside.

An 18-year sentence is warranted because it is consistent with sentences handed down in this District for similar conduct. *See* 18 U.S.C. § 3553(a)(6) (requiring that in sentencing Court consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."). In *United States v. Williams*, Case No. CR 17-0077 YGR (ECF No. 87), the Court sentenced defendant Williams to 184 months (15 years, 4 months) in prison for his involvement in armed restaurant robberies in April 2016. Williams' conduct was less serious than Simmons' conduct in this case. Williams admitted to participating in two armed restaurant robberies as a getaway driver or lookout, but he did not admit as part of his plea agreement to entering the restaurants or holding a firearm in connection with the robberies. United States Sentencing Memorandum, *United States v. Williams*, Case No. CR 17-0077 YGR, ECF No. 83 (Aug. 23, 2018), at 3, 6. According to the government, the evidence established that Williams participated in a total of three armed robberies; Williams maintained that he participated in two armed robberies. *Id.* at 1-2. Further, Williams' personal history and characteristics are similar to Simmons in that Williams had a significant criminal history but a severely traumatic childhood. Williams' Sentencing Memorandum, *United States v. Williams*, Case No. CR 17-0077 YGR, ECF No. 82 (Aug. 22, 2018), at 2-3.

Meanwhile, two senior members of Williams' robbery crew, Shawan Spragans and Merl

UNITED STATES' SENTENCING MEMORANDUM
NO CR. 18-00179-002 EMC

Simpson, received sentences of 23 years (276 months) and 20 years (240 months), respectively. *See United States v. Spragans et al.*, Case No. CR 16-00292 YGR (ECF Nos. 92 & 93). These sentences are consistent with the government's recommended 18-year sentence for Simmons. Spragans and Simpson conducted more armed robberies than Simmons, and a firearm was discharged during one robbery, but they did not conduct armed home invasion robberies. The armed business and restaurant robberies are somewhat less invasive than armed home invasion robberies in the middle of the night that involve tying up, striking, and locking up victims in their own homes. Further, both Spragans and Simpson faced a slightly higher Total Offense Level (29), Criminal History Category (VI), and Guidelines' range (271-308 months) than Simmons. *See* United States' Sentencing Memoranda, *United States v. Spragans et al.*, Case No. CR 16-00292 YGR (ECF Nos. 50 & 51), at 8-9. But the Court sentenced Spragans within the Guidelines, and should do the same with Simmons here in order to avoid unwarranted sentencing disparities between similarly situated defendants. Sentencing Simmons to 18 years in prison avoids unwarranted sentencing disparities because his conduct is more egregious than that of defendant Williams who was sentenced to more than 15 years, but arguably somewhat less egregious than defendants Spragan and Simpson, who were sentenced to 23 and 20 years.

Finally, Simmons' sentence should avoid unwarranted sentencing disparities with similarly situated state defendants. In June 2019, in a similar home invasion case, a Sonoma County Superior Court sentenced the defendant to 57 years to life in prison for an October 2017 armed home invasion robbery in which the defendant and others held a family at gunpoint in their Santa Rosa home while stealing marijuana, guns, jewelry, and money. Santa Rosa Man Sentenced to 57 Years to Life in 2017 Home Invasion, *The Press Democrat*, June 25, 2019 (available at https://www.pressdemocrat.com/news/9739878-181/santa-rosa-man-sentenced-to?sba=AAS). The defendant there had two prior "strike" convictions and was sentenced following a jury trial. *Id.* Nonetheless, Simmons also has multiple prior violent felony convictions and engaged in two armed home invasions rather than one, as was the case in the June 2019 state court sentencing.

## IV. CONCLUSION

For all the foregoing reasons, the United States recommends a sentence of 18 years (216 months)

UNITED STATES' SENTENCING MEMORANDUM
NO CR. 18-00179-002 EMC

imprisonment, restitution for the victims, and three years of supervised release.  This sentence is sufficient but not greater than necessary, to reflect the seriousness of Simmons' crimes, promote respect for the law, and deter the defendant and others like him from violating this law in the future.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: August 8, 2019 | DAVID L. ANDERSON<br>United States Attorney |
|  | _____/s/_____<br>CHRISTIAAN H. HIGHSMITH<br>Assistant United States Attorney |